ELIZABETH A. WOLFORD, United States District Judge *916 INTRODUCTION
Represented by counsel, Plaintiff Jordan M. Barco ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Acting Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 11; Dkt. 15). For the reasons discussed below, Plaintiff's motion (Dkt. 11) is granted in part, the Commissioner's motion (Dkt. 15) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.
BACKGROUND
Plaintiff protectively filed an application for SSI on September 5, 2013. (Dkt. 7-2 at 9).[1] Plaintiff alleged disability beginning on March 27, 2013. (Id. ). Plaintiff's application was initially denied on November 4, 2013. (Id. ). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") John P. Costello on August 10, 2015. (Id. at 31-68). On September 16, 2015, the ALJ issued an unfavorable decision. (Id. at 9-18). The Appeals Council denied Plaintiff's request for review on February 14, 2017, making the ALJ's determination the Commissioner's final decision. (Id. at 2-5). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence).
II. Disability Determination
An ALJ must follow a five-step sequential evaluation to determine whether a *917 claimant is disabled within the meaning of the Act. See Parker v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. § 416.920(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If the claimant cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. See Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 5, 2013, his application date. (Dkt. 7-2 at 11). At step two, the ALJ found that Plaintiff suffered from the severe impairments of anxiety, depression, panic disorder, degenerative disc disease of the lumbar spine, and obesity. (Id. ). The ALJ also found that Plaintiff suffered from a non-severe right shoulder impairment. (Id. ). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment. (Id. ). The ALJ particularly considered the criteria of listings 1.04, 12.04, and 12.06 with respect to Plaintiff's physical impairments, as well as the "paragraph B" and "paragraph C" criteria with respect to Plaintiff's mental impairments. (Id. at 11-12).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform "light work" except that Plaintiff "is limited to performing simple and routine tasks in a low stress environment defined as involving only occasional decision-making, no interaction with the general public, and an environment in which work is performed primarily alone *918 with only occasional supervision." (Id. at 13).
In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as the opinion evidence provided. (Id. ). Among the materials considered was the opinion of social worker Beverly Dodd, who opined that Plaintiff is unable to maintain attention for two-hour segments, sustain an ordinary routine without special supervision, and complete a normal workday without interruptions from psychological symptoms. (Dkt. 7-8 at 573). Ms. Dodd also noted that Plaintiff would miss work more than four days of work per month. (Id. at 574). The ALJ stated that Ms. Dodd was not an acceptable medical source under the regulations; that Ms. Dodd had indicated that Plaintiff was not compliant with his treatment regimen and that she could not assess whether he was malingering; and that her opinion that Plaintiff would miss more than four days of work per month was conjectural. (Dkt. 7-2 at 16). The ALJ assigned "very limited weight" to Ms. Dodd's opinion. (Id. ).
The ALJ also considered the opinion of Dr. Suhda Bakshi, a psychiatrist who saw Plaintiff for therapy every three weeks and for medication every two to three months. (Dkt. Dkt. 7-2 at 16; Dkt. 7-8 at 179). Dr. Bakshi opined that Plaintiff would miss more than four days of work per month, but also noted that Plaintiff has only mild to moderate limitations in multiple areas of functioning, including carrying out simple instructions, maintaining attention for two-hour segments, working in coordination with others, and making simple work-related decisions. (Dkt. 7-2 at 16; Dkt. 7-8 at 181). The ALJ assigned Dr. Bakshi's opinion "limited weight," concluding that her opinion regarding Plaintiff's limitations was inconsistent with her conclusion that Plaintiff would miss more than four days of work per month. (Dkt. 7-2 at 16). The ALJ also noted that Dr. Bakshi's clinical notes indicate that Plaintiff's condition is "fairly stable." (Id. ).
II. The Treating Physician Rule
The treating physician rule[2] provides that a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). An ALJ can refuse to allot controlling weight to a treating physician's medical opinion, but in doing so he or she "must consider various factors to determine how much weight to give to the opinion." Halloran v. Barnhart , 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:
(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.
Id. An ALJ's failure to explicitly consider these factors in assigning weight to a treating physician's opinion can constitute *919 grounds for a remand. See Clark v. Astrue , No. 08 Civ. 10389 (LBS), 2010 WL 3036489, at *4 (S.D.N.Y. Aug. 4, 2010) (opining that an ALJ "committed legal error" when he "fail[ed] to explicitly consider all the required factors [articulated in Halloran ] when evaluating [the treating physician's] opinion").
Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527 (c)(2) ; see also Harris v. Colvin , 149 F.Supp.3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons' " for the weight given to a treating source opinion." (quoting Halloran , 362 F.3d at 32 ) ). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific ..." Harris , 149 F.Supp.3d at 441 (internal quotation marks omitted). The Second Circuit "[does] not hesitate to remand when the Commissioner's decision has not provided 'good reasons' for the weight given to a [treating physician's] opinion and [it] will continue remanding when [it] encounter[s] opinions from [ALJs] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran , 362 F.3d at 33.
"In analyzing a treating physician's report, 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.' " Rosa v. Callahan , 168 F.3d 72, 79 (2d Cir. 1999) (quoting McBrayer v. Sec'y of Health & Human Servs. , 712 F.2d 795, 799 (2d Cir. 1983) ). Thus, an ALJ's subjective impression regarding the validity of a claimant's impairments does not constitute "good reasons" to disregard a treating physician's opinion. See Clark , 2010 WL 3036489, at *5 (opining that ALJ's subjective impression of claimant's impairments was not a "good reason" to disregard treating source's opinion).
Furthermore, "a reason ... that relies on a mischaracterization of the record cannot be a good reason [for disregarding a treating source's opinion]." Wilson v. Colvin , 213 F.Supp.3d 478, 485 (W.D.N.Y. 2016) (internal quotation marks omitted). In Wilson , the court opined that the ALJ had not provided "good reasons" for dismissing the treating physician's opinion when he mischaracterized evidence regarding the claimant's enjoyment of "mentally stimulating puzzles," which the ALJ thought "established that [the claimant] could not have 'significantly impaired concentration and persistence[.]' " See id. at 484-85 ("While [the plaintiff] did testify that he used Sudoku or word puzzles to try to get his mind off his pain, he qualified this by stating that he could only focus on doing a puzzle about 10 to 15 minutes before he became frustrated by his pain." (internal citation omitted) ).
Plaintiff argues that the ALJ violated the treating physician rule when he failed to assign controlling weight to Ms. Dodd's opinion without providing "good reasons" for doing so. (Dkt. 11-1 at 18-19). Defendant responds that Ms. Dodd's opinion was not entitled to controlling weight as a treating source because a social worker is not an "acceptable medical source" as defined in the regulations. (Dkt. 15 at 20).
The Court agrees with Defendant that Ms. Dodd's opinion was not entitled to controlling weight. The "acceptable medical source[s]" are outlined in 20 C.F.R. § 416.913(a) (2015). Licensed social workers are not listed as an acceptable medical source. See id. Thus, a licensed social worker cannot be a treating source, and *920 cannot give "medical opinions." Wider v. Colvin , 245 F.Supp.3d 381, 389 (E.D.N.Y. 2017). Because ALJ's are only required to weigh and evaluate "medical opinions," the ALJ was not required to give Ms. Dodd's opinion any weight. Id. at 389-91.
However, an ALJ should evaluate evidence from "other sources" on key issues like impairment severity and functional effects. Social Security Ruling 06-3p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006) ; Glena v. Colvin , No. 1:15-CV-00510(MAT), 2018 WL 739096, at *3 (W.D.N.Y. Feb. 6, 2018). An ALJ may not disregard opinion evidence from a non-medical source simply because the evidence is from such a source. Canales v. Comm'r of Soc. Sec. , 698 F.Supp.2d 335, 344 (E.D.N.Y. 2010) (holding that ALJ erred in disregarding opinion of social worker simply because it was the opinion of a social worker, "not on account of its content or whether it conformed with the other evidence in the record").
Here, the ALJ afforded Ms. Dodd's opinion "very limited weight" for reasons other than the fact that she is a social worker. (Dkt. 7-2 at 16). He noted that the Plaintiff had not been compliant with his treatment at the time of Ms. Dodd's evaluation, and, additionally, that Ms. Dodd indicated that she was unable to assess whether Plaintiff was malingering. (Id. ). Indeed, subsequent evidence in the record shows that Plaintiff's condition improved with treatment. (Dkt. 7-8 at 51, 121-42). The ALJ was not required to treat Ms. Dodd's opinion as a treating physician's opinion, and he did not err in declining to assign it controlling weight.
Next, Plaintiff argues that the ALJ erred in failing to provide "good reasons" for affording Dr. Bakshi's opinion limited weight. (Dkt. 11-1 at 24). The ALJ stated that there was insufficient evidence in the record to substantiate Dr. Bakshi's claim that Plaintiff would miss more than four days of work per month, and that Dr. Bakshi's own clinical notes indicate that Plaintiff's condition is "fairly stable." (Dkt. 7-2 at 16). Defendant responds that the ALJ properly declined to give Dr. Bakshi's opinion controlling weight because it was not consistent with other substantial evidence in the record. (Dkt. 15 at 24).
The Court concludes that the ALJ relied on a mischaracterization of the record in affording "limited weight" to Dr. Bakshi's opinion and therefore violated the "good reasons" rule. The ALJ explained that Dr. Bakshi's opinion that Plaintiff would miss more than four days of work per month was inconsistent with her conclusion that Plaintiff has mild to moderate limitations in multiple areas of functioning. (Dkt. 7-2 at 16). However, the ALJ failed to note that Dr. Bakshi rated Plaintiff's impairments in various areas as category III, which indicates that the impairment "[p]recludes performance from 11% to 20% of an 8-hour workday." (Dkt. 7-8 at 181). Four missed days of work per month is equal to just under 20% of full-time work. Dr. Bakshi rated Plaintiff's impairments as category III with respect to his ability to: "[m]aintain regular attendance and be punctual within customary, usually strict tolerances"; "[c]omplete a normal workday and workweek without interruption from psychologically based symptoms"; "[g]et along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes"; and "[t]ravel to unfamiliar places or use public transportation." (Id. at 181-82). Dr. Bakshi also rated Plaintiff as categories I and II on a number of other abilities/aptitudes. (Id. ). It is not clear that Dr. Bakshi's ratings are inconsistent with the conclusion that Plaintiff would miss four days of work per month. The ALJ summarily concluded that Dr. Bakshi's opinion was internally inconsistent, and, without further explanation, that was a mischaracterization of the record.
*921 The ALJ also mischaracterized Dr. Bakshi's opinion in noting that "Dr. Bakshi's own treatment notes indicate that despite ongoing psychiatric symptoms, the claimant's condition is fairly stable." (Dkt. 7-2 at 16). The ALJ suggests that being "fairly stable" is inconsistent with missing four days of work per month. However, as the court explained in Colvin v. Astrue , No. 09-CV-132 FJS/VEB, 2011 WL 4055324 (N.D.N.Y. June 10, 2011), report and recommendation adopted sub nom. Colvin v. Comm'r of Soc. Sec. , No. 3:09-CV-132 FJS/VEB, 2011 WL 4055313 (N.D.N.Y. Sept. 12, 2011), stability "suggests that [the plaintiff's] symptoms are unchanged ... over time," not necessarily that the symptoms are "mild." Id. at *5. Thus, the ALJ mischaracterized Dr. Bakshi's opinion in assigning it "limited weight" based, in part, on the conclusion that Dr. Bakshi's opinion is internally inconsistent. The Court concludes that remand of this case is necessary for proper application of the treating physician rule.
CONCLUSION
For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 15) is denied, Plaintiff's motion for judgment on the pleadings (Dkt. 11) is granted in part, and this matter is remanded for further administrative proceedings consistent with this Decision and Order, pursuant to 42 U.S.C. § 405(g). See Curry v. Apfel , 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

The treating physician rule applies to claims filed before March 27, 2017. 20 C.F.R. § 404.1527. The current version of the SSA's regulations eliminates the treating physician rule, but those regulations apply to cases filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. As a result, the treating physician rule applies to Plaintiff's claim, which was filed in December 2013.